IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

**JAMARCUS BROWN, as next of kin of**
**ROCKY DARRIN BROWN, deceased,**
**and on behalf of the wrongful death**
**beneficiaries of ROCKY DARRIN BROWN,**

                                  **Plaintiff,**

v.     Case 2:18-cv-02740-MSN-cgc

**QUINCE NURSING AND REHABILITATION**
**CENTER, LLC d/b/a QUINCE NURSING**
**AND REHABILITATION CENTER;**
**AURORA CARES, LLC; DTD HC, LLC;**
**D&N, LLC; DONALD T. DENZ; and,**
**NORBERT A. BENNETT,**

                                  **Defendants.**

---

**REPORT AND RECOMMENDATION ON QUINCE NURSING HOME AND REHABILITATION CENTER, LLC, d/b/a QUINCE NURSING AND REBAHILITATION CENTER'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

---

Before the Court is Defendant Quince Nursing Home and Rehabilitation Center, LLC, d/b/a Quince Nursing and Rehabilitation Center's ("Quince") Motion to Compel Arbitration and Stay Proceedings ("Motion"). (Docket Entry ("D.E.") # 8). The instant motion has been referred for Report and Recommendation. (D.E. #24). For the reasons set forth herein, it is RECOMMENDED that Quince's Motion to Compel Arbitration and Stay Proceedings be DENIED.

1

**I. Introduction**

This case arises from allegations that the individual and facility Defendants named herein failed to take appropriate care of Rocky Darrin Brown ("Decedent") while he was a patient at Quince. (Compl., *passim*). Decedent resided at Quince from on or about April 24, 2017 until he was transferred to Saint Francis Hospital on or about November 28, 2017. (*Id.* ⁋ 2). Plaintiff later died on March 31, 2018. (*Id.*) Jamarcus Brown ("Plaintiff"), who is Decedent's son, has brought the instant action as Decedent's next of kin. (*Id.* ⁋ 1).

On November 2, 2018, Quince filed the instant Motion. As exhibits thereto, Quince filed the Resident and Facility Arbitration Agreement (Mot., Exh. A ("Arbitration Agreement")) and the Appointment of Surrogate form (Mot., Exh. B ("Surrogate Appointment")).

*A.  Surrogate Appointment*

The Surrogate Appointment purports to designate Gladys Pratchart ("Pratchart"), who is Decedent's mother, as Decedent's Surrogate. (Mot., Exh. B at 1). On April 17, 2017, Pratchart signed the following Acceptance of Surrogate Selection: "I accept the appointment as surrogate for this Resident and understand I have the authority to make all health care related decisions for Rocky Brown [handwritten] including the signing of an arbitration agreement."  (*Id.* at 2).

Below the Acceptance of Surrogate Selection, the Surrogate Appointment contains a section for Physician Notification and Approval, which states as follows:

> I, Mukesh Jain [handwritten], am the physician who has primary responsibility for the health care of Rocky Brown.  I find that the Resident (please check one):
>
> _____ lacks capacity  _____ has capacity

2

    to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health care decision. I agree with the decision to appoint this surrogate. It is my opinion that this is true both on the day the surrogate accepted the appointment and today. It is my intention that the designation of surrogate is effective back to the date of acceptance by the surrogate, so that healthcare decisions made by the surrogate for the resident back to that day are valid.

(*Id*.) Neither the "lacks capacity" or "has capacity" boxes were checked. (*Id*.) Beneath this paragraph is a space for the Signature of Designated Physician, which contains an illegible signature, and a space for the date, which is blank. (*Id*.)

### B. *Arbitration Agreement*

The Arbitration Agreement was also executed on April 17, 2017 by Pratchart and Tiffany Tipton, a facility representative. (Mot., Exh. A. at 3). It sets forth that it is between Decedent and Quince and provides as follows:

> **BY SIGNING THIS ARBITRATION AGREEMENT ("AGREEMENT"), THE RESIDENT AND THE FACILITY UNDERSTAND THAT THEY ARE WAIVING THE RIGHT TO A JURY TRIAL FOR ANY DISPUTE, AND THAT THE DECISION OF THE ARBITRATOR(S) BINDS BOTH PARTIES, IS FINAL AND NONAPPEALABLE.**

(*Id*. at 1). The Arbitration Agreement states that "[a]ny and all disputes . . . where the amount in controversy exceeds $25,000" shall be submitted to binding arbitration. (*Id*.) It further states that "[t]his includes any disputes arising out of or in any way relating to this Agreement (its enforceability), the Admission Agreement, or any of the Resident's stays at the Facility, whether existing or arising in the future, whether for statutory, compensatory, or punitive damages, and irrespective of the legal theories upon which the claim is asserted." (*Id*.)

The Arbitration Agreement states as follows with respect to who may sign the document: "A person signing who routinely makes decisions for the Resident, if not the Power of Attorney

3

or Guardian/Conservator, will be considered a health care surrogate/proxy and/or Legal Representative." (*Id*.) The Arbitration Agreement further provides that the Resident, or any person signing with or for the Resident, can seek legal counsel prior to entering the contract and is encouraged to ask questions. (*Id*.) The Arbitration agreement states that, even if it is not signed, the resident will still be allowed to receive services at the facility. (*Id*.)

## II. Proposed Analysis

Quince's Motion seeks that this Court enforce the Arbitration Agreement pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and stay the proceedings in this Court pending the resolution of the arbitration. However, Plaintiff's Response asserts that Pratchart was not a properly designated surrogate pursuant to Tennessee Code Annotated Section 68-11-1806, which requires that "[t]he patient has been determined by the designated physician to lack capacity" before a surrogate may act on his behalf. *Id*. § (b)(1). Thus, Plaintiff argues that Pratchart could not execute the Arbitration Agreement as surrogate for Decedent.

Section 2 of the FAA provides that a written arbitration agreement "shall be enforceable 'save upon grounds as exist in law or in equity for the revocation of any contract.'" *Stutler v. T.K. Constructors, Inc.*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2). "In other words, whether an arbitration clause is enforceable is governed by state law" because state law "govern[s] issues concerning the validity, revocability, and enforceability of contracts generally." *Id*. (citing *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987)). The burden of proving a valid, enforceable agreement to arbitrate falls upon the party seeking to compel arbitration. *In re First Thermal Sys., Inc.*, 182 B.R. 510, 513 (Bankr. E.D. Tenn. 1995); *Charles Raines v. Nat'l Health Care Corp., d/b/a NHC Healthcare, Murfreesboro*, No. M2006-1280-COA-R3-CV, 2007 WL 4322063, at *1, *5 (Tenn. Ct. App. Dec. 6, 2007). A court "may compel arbitration only if, after considering the

4

evidence presented, there is no genuine issue of material fact" that a valid arbitration agreement exists because, "in spite of the strong policy in its favor, a party cannot be compelled to arbitrate that which it has not agreed to arbitrate." *In re First Thermal Sys.*, 182 B.R. at 512 (quoting *Amalgamated Clothing Workers of America, AFL-CIO v. Ironall Factories, Co.*, 386 F.2d 586, 590 (6th Cir. 1967)).

### A. *Choice of State Law*

To determine whether a valid and enforceable contract to arbitrate was created, the Court must first determine which state contract law applies. First, the Arbitration Agreement itself provides that "*[t]he Arbitrator* shall apply the law of the state where the Facility is located . . ." (Mot. Exh. A at 1). Here, the Facility is located in Memphis, Tennessee. (Compl. ¶¶ 4, 19). Some courts have reasoned that similar provisions requiring the arbitrators to "apply the substantive law of the state in which employees were employed in evaluating their claims" were instructive, at least in part, on the choice-of-law question. *Walker v. Ryan's Family Steak Houses, Inc.*, 289 F. Supp. 2d 916, 928 (M.D. Tenn. 2003); *see also Leach v. Kenetic Concepts, Inc.*, No. 1:06 CV 00525, 2006 WL 3337471, at *2 (S.D. Ohio Nov. 16, 2006). However, when the very validity of the Arbitration Agreement is at issue, it would seem counterintuitive to determine that the language contained in the allegedly invalid Arbitration Agreement governs whether it is valid.

Plaintiff argues that, "[b]ecause the subject arbitration contract was purportedly executed in Tennessee, Tennessee state law principles and contract defenses apply." (Pl.'s Resp. at 4) (citing *Duane Hayward v. Trinity Christian Center of Santa Ana*, No. 3:14-cv-2282, 2015 WL 1311752 at *3 (M.D. Tenn. Mar. 24, 2015) (concluding that Tennessee state law governs the question of whether or not an arbitration agreement is enforceable when the agreement was entered into in Tennessee). However, here, the Arbitration Agreement does not state where it was executed.

(Mot., Exh. A). While Plaintiff's Complaint asserts that the "injuries [that] made the basis of this lawsuit," including the "products of the corporate and financial policies designed, formulated, and implemented by Nursing Home Defendants" occurred in Shelby County, Tennessee, (Compl. ¶ 10), it also does not mention the Arbitration Agreement or where it was executed. It appears possible, and in fact highly likely, that it was executed at Quince's facility in Memphis, Tennessee during the preparations for Decedent to begin his residence. Quince avers this to be the case (although its citation to the Arbitration Agreement, which is silent on its place of execution, fails to provide any support for that proposition). (*See* Memo. in Support of Mot. at 2). Plaintiff, however, notes that this assertion of its place of execution is only "purportedly" the case. (*See* Resp. at 2).

Ultimately, despite the lack of evidence in the record as to the Arbitration Agreement and Surrogate Appointment's place of execution, the parties here agree that Tennessee law applies. While the Court is unable to independently verify that fact, there is no allegation that the Arbitration Agreement and Surrogate Appointment were executed elsewhere. There are also no allegations that any other pertinent events occurred elsewhere or any assertions that this Court should consider applying the law of another state other than Tennessee, where Quince is based and where Plaintiff resided. Accordingly, based upon the parties' agreement that Tennessee law applies to the formation of the Arbitration Agreement and the Surrogate Appointment, it is RECOMMENDED that the Court apply Tennessee law to the question of whether these contracts were formed in a manner such that they are valid and enforceable.

### B. *Tennessee Health Care Decisions Act*

Under the Tennessee Health Care Decisions Act, the appointment of a surrogate for the purpose of making health care decisions is governed by Tennessee Code Annotated Section 68-11-1806, which provides in pertinent part as follows:

(a) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health care provider. The designation may be oral or written.

**(b) A surrogate may make a health care decision for a patient who is an adult or emancipated minor, if, and only if:**

**(1) The patient has been determined by the designated physician to lack capacity;** and

(2) No agent or guardian has been appointed or the agent or guardian is not reasonably available.

Tenn. Code Ann. § 68-11-1806(a)-(b) (emphasis added); *see also* Tenn. Code Ann. § 68-11-1803(d) ("A determination that an individual lacks or has recovered capacity . . . must be made by the designated physician."). "The statutory language is directive, mandating that both the determination of the patient's incapacity and the identification of the patient's surrogate be made by the patient's 'designated physician,' the physician with primary responsibility for the patient's care. A surrogate may make health care decisions on the patient's behalf only if these requirements are met." *Dwight Barbee v. Kindred Healthcare Operating, Inc*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *11 (Tenn. Ct. App. Oct. 20, 2008). "In the event of a challenge, there shall be a rebuttable presumption that the selection of the surrogate was valid. Any person who challenges the selection shall have the burden of proving the invalidity of that selection." Tenn. Code Ann. § 68-11-1803(c)(6).

Here, the Surrogate Appointment is silent on whether Decedent had or lacked capacity. The Surrogate Appointment also contains no date on which it was executed. Thus, there is no

evidence before the Court to demonstrate that Decedent's designated physician properly determined that he lacked capacity. The Tennessee Court of Appeals mentioned this issue in another case involving an arbitration agreement executed in connection with a nursing home admission. *See Regina Edwards v. Allenbrooke Nursing & Rehabilitation Ctr., LLC*, No. W2016-02553-COA-R3-CV, 2017 WL 4861658, at *1-*6 (Tenn. Ct. App. Oct. 26, 2017). In *Edwards*, the Appointment of Surrogate form contained the physician's express finding that the nursing home patient "'has capacity to understand the significant benefits, risks, and alternatives to proposed health care and to make and communicate a health care decision." *Id*. at *2. The trial court further found that, "[w]ithout any evidence in the record to indicate that a physician had determined that [the resident] lacked capacity, the trial court concluded that [the surrogate designee] did not have the authority to sign the arbitration agreement on [the resident's] behalf as her surrogate." *Id*. This finding was not contested on appeal, *see id*., and it appears to this Court to be wholly consistent with the applicable provisions of the Tennessee Health Care Decisions Act.

Similarly here, this record contains no evidence to indicate that Decedent had "been determined by the designated physician to lack capacity," as required by Tennessee law. The lack of evidence of this required element necessitates a recommendation that Plaintiff has rebutted the presumption that the surrogate designation was valid. Accordingly, it is RECOMMENDED that the Surrogate Appointment does not comply with Tennessee law and that Pratchart was not validly designated as Decedent's surrogate. It is further RECOMMENDED that, as Pratchart was not a validly designated surrogate, Pratchart could not execute a valid, enforceable arbitration agreement on Decedent's behalf. Therefore, it is RECOMMENDED that Quince's Motion to Compel Arbitration and Stay Proceedings be DENIED.

**DATED** this 7th day of February, 2019.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**